## HICKOK v. SKINNER

No. 7069.   Decided March 5, 1948.   (190 P. 2d 514.)

1

2

See 42 C. J., Motor Vehicles, sec. 702. Doctrine of last clear chance, see note, 171 A. L. R. 365. See, also, 5 Am. Jur. 778.

*Edwin D. Hatch*, of Salt Lake City, for appellant.

*F. Henri Henriod*, of Salt Lake City, for respondent.

LATIMER, Justice.

Automobile damage suit arising out of a collision of two vehicles owned and operated by the plaintiff and defendant, respectively. From a judgment of nonsuit entered by the trial judge sitting without a jury, the plaintiff has brought this appeal. Appellant and respondent will be designated herein as plaintiff and defendant, respectively.

The accident occurred in Salt Lake City at 5:10 p. m. on October 31, 1946, at the intersection of 21st South Street and West Temple Street. Twenty-first South is an arterial highway running east and west, with stop signs placed so as to stop traffic coming from the north and south. The plaintiff was travelling north on West Temple, and the fair import of his testimony is as follows: Upon approaching the intersection involved, he came to a stop at the stop sign, which is located 20 feet south of the south curb line of 21st South Street. There was heavy traffic coming from the west, so he waited for these cars to pass. He then looked east and saw an automobile more than half a block away, between four and five hundred feet east of the inter-

section. There was some traffic coming from the north which plaintiff claims required his attention because of the possibility of a driver making a left-hand turn in front of him. However, this traffic was required to make a stop on the north side of 21st South before entering the intersection, so that plaintiff was not confronted with rapidly-moving traffic from that direction. When he started up, plaintiff figured he had time in which to make a safe crossing before the car he had observed coming from the east on 21st South Street would reach the intersection, so he proceeded across 21st South Street without ever again looking to the east. He never again saw any car coming west on 21st South until his car was struck by defendant's automobile squarely in the middle of the right side, inflicting the damage complained of. Plaintiff made no effort to estimate the speed of the approaching car. He relied entirely on distance for his factor of safety. He was also uncertain as to whether or not the car he saw approaching 400 to 500 feet east of the intersection was the defendant's car. However, he later testified that the car he observed was the only car on the street in that block at that time, and we assume for the purpose of the decision that the car he observed was the defendant's automobile.

Other facts disclosed by the record are these: The width of 21st South Street is 63 feet, and the length of the block along which defendant was travelling is 660 feet. The point of impact was 18 feet south of the north curb line of 21st South Street, 9 feet west of the east curb line of West Temple Street, and 65 feet north of the stop sign by which plaintiff had stopped before entering the intersection. Plaintiff had an unobstructed view the full length of the block to the east. Defendant's speed, according to what defendant told the investigating officers, was 45 mph, the posted speed limit for that street being 35 mph. There were no skid marks before the impact occurred. Plaintiff, not having seen defendant's car after the first observation of it, made no attempt to avoid a collision, and defendant made little, if any, effort to prevent the impact.

Under these facts the trial court found the plaintiff to have been guilty of contributory negligence as a matter of law, and accordingly entered a judgment of nonsuit. The correctness of the trial court's ruling is the only question presented on this appeal.

The right of the plaintiff to proceed into this or other like intersections is set forth in Revised Ordinances, Salt Lake City, 1944, Section 6128 (c) 2, which conforms to Section 57-7-138, U. C. A. 1943. The municipal ordinance reads as follows:

Section 6128 (c) 2.

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right of way to the vehicle so proceeding into or across the through highway."

Plaintiff's evidence was that defendant was 400 to 500 feet back from the intersection travelling at a speed of 45 mph. If the distance was 400 feet, the defendant would have required approximately six seconds to reach the point of collision; if 500 feet away, approximately seven and one-half seconds. Under such facts defendant's car could not be said to have been approaching so closely as to constitute an immediate hazard. Therefore, the ordinance above quoted required the defendant to yield the right of way to plaintiff's automobile.

Granted that the defendant should have yielded the right of way, that does not absolve plaintiff of negligence for his prolonged inattention to the traffic that was approaching west on 21st South. He testified that, having once seen defendant's automobile approaching the intersection 400 to 500 feet to the east, he started his car forward from a point 20 feet back from the intersection, drove into and almost across the intersection or a distance of 65 feet, without ever again looking in the direction from

which defendant's car was approaching. For a period of approximately six to seven and one-half seconds, the plaintiff never looked to the east on 21st South Street, from which direction he knew there was a car coming. Further, defendant's car was travelling along an arterial highway where faster speeds were permitted, and the speed of this approaching automobile was unknown to the plaintiff, his testimony being that he couldn't say whether it was moving or standing still.

From these facts the conclusion is inescapable that the plaintiff failed to act in a prudent and careful manner, and that his negligence was a contributing cause to the collision. The fact that the plaintiff had the right of way over the defendant did not permit him, after having observed the defendant's car approaching the intersection, to thereafter completely ignore it, even though at the time he started he might reasonably have believed he had time in which to get safely across. While his attention may have been momentarily distracted by other traffic coming south on West Temple Street, such traffic was required to stop before entering the intersection and so would be travelling at a much slower speed than would the traffic moving along the arterial highway. The evidence fails to establish a traffic situation which required the attention of a reasonably careful driver to be so restricted as to prevent him making a second observation to the east. The scope of plaintiff's vision would have permitted him to have seen the automobile approaching without the necessity of turning his head completely around to the right. The time element, even if it were less than is shown by the evidence, was such that a reasonably prudent and careful person would have glanced to the east several times while traversing the distance from the stop sign to the point of collision. One look to the east before crossing the center line of 21st South Street would have disclosed to the plaintiff that he was about to enter the path of a rapidly moving vehicle, and that if he continued forward, a collision of the two vehicles would most likely occur. Furthermore, at the relatively slow

speed plaintiff was travelling, he could easily have made an immediate stop in time to have avoided the collision which did take place.

The law governing this situation is succinctly and, we think, correctly stated in the case of *Driefus* v. *Levy*, La. App., 140 So. 259, 263, wherein the court said:

"The mere fact that the truck driver entered the intersection first did not justify him in proceeding without caution and care, totally disregarding the on-coming car which he had seen, and he could have easily discovered by looking that whatever rights he had by virtue of entering the intersection first were not going to be respected by the [other] car. He should not have advanced into the pathway of the [other] car, and, by doing so, was guilty of negligence. Huddy's Enc. of Automobile Law, (9th Ed.) Vol. 3-4, p. 278; *Buckner* v. *Powers*, 12 La. App. 630, 125 So. 744."

While the facts in the case of *Bullock* v. *Luke*, 98 Utah 501, 98 P. 2d 350, are dissimilar, one of the rules laid down by that case is applicable here; and that is, regardless of which driver is technically entitled to the right of way, both operators must use due care and caution in proceeding into and across intersections. While the burden to drive so carefully as always to be prepared for, and to be able to avoid, the negligence of another should not be placed on either driver, there should be placed on both the burden to keep a proper lookout and to use reasonable care to avoid a collision. Neither should be permitted to close his eyes to other vehicles which he knows or has reason to believe are approaching, simply because a state statute or municipal ordinance designates him the preferred driver. The rights of drivers approaching and crossing intersections are relative. Both drivers have the duties of being heedful and of maintaining a proper lookout. Plaintiff was neglectful in both particulars, and no jury could reasonably find that he was not negligent.

Plaintiff in claiming that, having looked once and having concluded that he had time to clear the intersection, he was not negligent in not having looked again, overlooks two factors that we believe are of controlling influence

in this case, and which affect the application of the rule of the *Bullock* case mentioned above. The first is, he was uninformed as to the speed of defendant's car. The second is that the speed at which plaintiff was travelling and the distance he had to travel, before he entered defendant's path of travel, permitted him time to look and to reappraise the relative positions of the cars and permitted him ample opportunity to correct his first conclusion, if he had erroneously estimated the distance the defendant's car was from the intersection.

The last clear chance doctrine, relied on by plaintiff, is inapplicable in the present instance. As has been repeatedly announced by this court, this doctrine is of limited application in the case of two moving vehicles. If plaintiff were moving at a slow rate of speed, defendant would not have known plaintiff was in a place of danger until the latter had crossed the center line of 21st South Street. It is not unusual for drivers crossing a wide arterial highway such as this to proceed across the near half of the street and then stop or come to a near stop near the middle to permit the passage of through traffic on the other half. The evidence having established 45 mph as the speed of defendant's car, his opportunity to avoid the collision would be extremely limited. Under the facts of this case it cannot be said that defendant had a clear chance to appreciate plaintiff's predicament and to avoid the collision. The faster plaintiff was travelling, the closer defendant's car would be to the point of impact, and the less chance defendant would have to take effective measures to avoid colliding with plaintiff's car. Under the last clear chance doctrine, obligations are also relative. Each driver is charged with using due care to avoid the collision, and one cannot say when his own negligence continues to the point of impact, "we were both negligent, but you alone are chargeable because I got there first and you should have missed me." See *Graham* v. *Johnson,* 109 Utah 346, 166 P. 2d 230, 237.

The judgment of the lower court is affirmed, the respondent to have his costs.

McDONOUGH, C. J., and PRATT and WADE, JJ., concur.

WOLFE, Justice (dissenting).

The prevailing opinion fairly reflects the evidence, and I accept the statement of facts as therein detailed.

This case is fraught with considerable difficulty, arising largely out of conflicting principles of law. The first is the familiar principle that one must exercise reasonable care for his own safety. The other is that a person having a right-of-way over a public thoroughfare ought to be protected in the exercise of that right, and is not bound to anticipate an unlawful or negligent act on the part of another. Generally there is no duty on the part of a driver exercising his right of traverse on that portion of the street set aside for him as a right-of-way or as one of his travel lanes to avoid the negligent encroachment of another on it until he becomes or should become aware that the other is not going or cannot return to his own side of travel or yield the right-of-way to the one to whom the law gives it.

I am in accord with the general rule laid down in the prevailing opinion that a driver who has stopped at a stop sign at the entrance to the intersection of a through highway, and who has observed and analyzed the traffic situation and determined that he may safely enter the intersection, and that he has the right-of-way to proceed across the intersection, has not fully discharged his duty of due care. As he proceeds across the intersection there attends upon him a duty to be aware of the relative positions and speeds of vehicles approaching from all directions, and he must recurrently reobserve, and reappraise in light of the constantly changing conditions of a fluid traffic situation.

The prevailing opinion holds that plaintiff here was guilty of contributory negligence as a matter of law, because he did not take a second look in the direction of de-

fendant's approaching automobile, after he (plaintiff) started up from the stop sign. I am not prepared to go so far. If after leaving the stop sign, plaintiff had proceeded across the intersection oblivious to all approaching traffic and all potential danger, then I might concur in the prevailing opinion. But that is not what plaintiff's evidence shows, and for purposes of this case, we must accept that evidence as true. Plaintiff testified as follows:

"Q. Weren't you watching for this car that was coming? A. I wasn't watching for the side car because everything was clear, and there was cars coming from the north, and I was watching them.
"Q. You were watching the cars coming from the north? A. I didn't want a car to turn in front of me. It was my place to watch."

I think the majority opinion fails to give any weight to this testimony. Plaintiff had analyzed the traffic situation and had concluded that defendant's westbound vehicle was so far distant as not to constitute any hazard at all. He, therefore, determined that due care on his part required that he give his undivided attention to the traffic approaching from the north. As it turned out, his judgment was bad. But I think that it was a question of fact, and not of law, whether or not a reasonable man might not have concluded as plaintiff did here, and have proceeded accordingly. Stated differently, whether or not plaintiff's conduct was consistent with due care was a question on which reasonable minds might differ, and was therefore for the trier of fact.

The rule laid down in the prevailing opinion is bound to lead to difficulties, if it is attempted to be applied in future cases having similar, but not identical, facts. To illustrate: In this case it is held that plaintiff was contributorily negligent as a matter of law, when he looked at a point 20 feet in front of the intersection but did not look thereafter. Suppose plaintiff had looked 10 feet past the stop sign? At the time he entered the intersection? Halfway across the intersection? Failure to look at which of these positions makes plaintiff guilty of contributory negligence as a matter of law? Where is the line to be drawn? At

what point does the issue of plaintiff's contributory negligence cease to be a question of law for the court, and become a question of fact for the trier of fact? Obviously no exact standard can be laid down. The various factors of each case (width of intersection, relative speeds and positions of the vehicle, conditions of visibility, etc.) must be to a large extent determinative. The holding of the majority should be limited to the facts of this case. Future cases must be decided on their own facts.

Where an intersection is controlled by a semaphore, the rights of various streams of traffic to proceed and the duties of other streams of traffic to halt are clearly indicated by the various colored lights of the signal. Little or nothing is left to human judgment. But where an intersection is controlled only by stop signs, or is uncontrolled, the rights of drivers to proceed and their duties to halt are to a large extent determined by human judgment. Where a stop sign requires a driver to stop before entering the intersection, such driver must halt and yield to all traffic "within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed." Sec. 57-7-138 (b), U. C. A. 1943. Whether an approaching driver is so close to the intersection as to constitute an immediate hazard is largely a question of human judgment, and will depend upon a number of factors, e. g. width of intersection, speed of approaching automobile, visibility conditions, whether the road is dry or slippery, and many other factors. And since the relative rights and duties of drivers approaching an intersection such as this depend to a large extent upon the exercise of human judgment, I am inclined to the opinion that the question of whether or not the judgment exercised by the drivers was reasonable, is a question of fact for the jury. I recognize that there may be some cases where the conduct of one driver or the other or both was so palpably unreasonable and inconsistent with due care that all reasonable minds would agree that such conduct was negligence. In such a case, the question ought to be taken from the jury and resolved by the court as

a matter of law. But I do not think that this is such a case, especially in view of plaintiff's testimony that he considered defendant's automobile so far away as to constitute no hazard, and he felt that it was his duty to concentrate his attention on the southbound traffic on West Temple Street. See *Lefevre* v. *Roberts*, 250 Mich. 675, 230 N. W. 917 (followed in a long line of Michigan cases, the latest of which seems to be *Pelham* v. *Keip*, 306 Mich. 500, 11 N. W. 2d 219) ; *Ellis et ux* v. *Olson*, 139 Wash. 351, 246 P. 944; *Day* v. *Polley*, 147 Wash. 419, 266 P. 169; *Garrett* v. *Byerly*, 155 Wash. 351, 284 P. 343, 68 A. L. R. 254; *Hill* v. *Fresno County*, 140 Cal. App. 272, 35 P. 2d 593; and *Peters* v. *Hockley*, 152 Or. 434, 53 P. 2d 1059, 103 A. L. R. 1347.

Even if it be conceded that plaintiff was contributorily negligent as a matter of law, the question of whether or not such negligence was a substantial causative factor in producing the collision was one of fact. Even if plaintiff had taken a second or third look, such might not have revealed to him that defendant would not yield the right-of-way to him, until too late for plaintiff to avert the accident. This case is somewhat similar to *Hess* v. *Robinson*, 109 Utah 60, 163 P. 2d 510. In that case plaintiff was driving on a through highway and did not see defendant's ambulance approaching from the right. The ambulance went through the stop sign and crashed into plaintiff's automobile. The trial court held both parties negligent as a matter of law, but submitted the case to the jury on the question of whether or not plaintiff's contributory negligence was a proximate cause of the damage. From a verdict and judgment for plaintiff, defendants appealed. We affirmed. Although this court divided on the question of whether or not plaintiff was guilty of contributory negligence as a matter of law, we agreed unanimously that the question of proximate cause was one for the jury. I recognize that the facts of this case are somewhat different from those in the *Hess* case, but the underlying reasoning should be the same.

For the reasons above stated, I dissent.

There remains the interesting problem raised by the fact that this was not a jury case, and the judge sat as trier of the facts. If no motion for nonsuit had been interposed, and *defendant had presented no evidence which could detract from the duty of plaintiff to include within the scope of his attention the progress of the defendant's car and the conduct of its driver during his course toward the intersection,* the court would have found, as a matter of fact, that plaintiff was guilty of contributory negligence. This conclusion is inescapable, since the court found as a matter of law that plaintiff was guilty of contributory negligence. Hence it might be argued that plaintiff could not be prejudiced by the order of nonsuit, since he would have surely lost on the facts anyway.

The above italicized qualification states the reason why there may be a difference between the fact situation presented to the trier of the facts before and after defendant has presented his case, which would make it incumbent on motion for nonsuit to determine whether there was contributory negligence as a matter of law. That there may be only a faint probability or the barest possibility that the defendant's case would introduce any element which would negate or lessen the force of any inferences of contributory negligence which the fact finder might otherwise find does not affect the right of plaintiff, on motion for a nonsuit, to have the court determine whether there is contributory negligence as a matter of law without regard to the court's opinion on the question of contributory negligence as a matter of fact.

I would reverse the judgment of the district court and remand the case for new trial.